15-16519 Philadelphia Indemnity Insurance Company v. Pace Burburban Bus 15-16519 Philadelphia Indemnity Insurance Company v. Pace Burburban Bus I am Steve Swalford on behalf of the Philadelphia Indemnity Insurance Company. Good morning, Mr. Swalford. Good morning, Your Honor. Good morning, Your Honor. I am William McFisk on behalf of Pace. Good morning, Mr. McFisk. We will schedule 15 minutes per side. We'll be reasonably flexible with that. Mr. Swalford, would you like to reserve some time? Thank you. All right. I apologize for being so late. I misdirected this. I've already apologized to opposing counsel. We've been very understanding. Okay. Well, we're glad you made it, and we're ready when you are. Okay. Well, I'm going to be brief as a result of not being as prepared as I should be. You know, the unique thing about this case, as opposed to all the cases that the trial court relied upon, is that this agreement that Pace entered into is really cast in terms of them assuming or acting like an insurance company. They refer to themselves as providing primary coverage for this incident. They talk about somebody being in the position of Philadelphia Insurance as providing excess coverage only. So the cases such as the DuPage County case and Antiport and whatnot really have no application to this situation at all. And the more recent case, like the Municipal League case I cited in my brief, which says that when a municipal entity is governed by the strict terms of its contract, and that is really, you know, the essence of our argument. Let's assume it is like a contract for insurance. We'll assume that what Pace entered into, it was really a lease of Pace Vehicles to Countryside, wasn't it? Right. Okay. But let's assume that it is a contract of insurance, and it certainly indicated that it would provide insurance directly arising out of the provision of transportation services by Pace. So in that instance, was this a situation where this contract had an exclusion? Was this reckless conduct? I'm sorry, I didn't mean to cut you off. There was more to that question. That was the question.  Is there an exclusion for reckless conduct? There's an exclusion here. That's our position, number one, that there's a question of fact as to whether that was a cause, and number two, and the trial court thought there was a question of fact. And number two, there's more than one insured here. Not only was Guitarra the insured, but the country. But under the Pace policy, if you're going to call it an insurance act, was there an exclusion for reckless conduct? Yes, there was that exclusion. All right, now. But countryside was an independent insured, and there's no contention that it is. What do you mean? What did you say? Countryside was an independent? Countryside was an insured, too, and it's seated insured, and it is being held. It was, in fact, settled for its negligent conduct, and there's no allegation that it was ever willfully one. No, but was there an exclusion for Pace for reckless conduct? In other words, if we call it a policy of insurance, did the policy say that we'll cover occurrences, but we will not cover reckless conduct arising from your agents, employees, et cetera? I don't think it's in those terms. Do you have the exclusion there? I don't see the exact terms of the exclusion since I've been questioned about it, and I can't put my finger on it. I think I found it there. Pace specifically excludes from insurance coverage afforded to agency herein any claims, actions, damages arising as a result of willful and wanton, reckless, or intentional conduct of agency, its officers, agents, employees, contractors, subcontractors, agents, or volunteers. I still don't think that excludes a claim made against Countryside. Okay. Well, the question, though, is are you saying that the policy should cover some things? And I still don't think that. I still don't think there's any determination. I still think it's a factual determination whether or not Guitaro's conduct was willful. Well, let's talk about that. It says willful and wanton, but then it also excludes any claims arising as a result of willful and wanton, reckless, or intentional conduct of Countryside. Okay. So now in the record, Pace has supplied various documents. They've got the letter that was first written by the attorney from Countryside explaining the basis of their tender to Philadelphia. Do you remember that letter? They call it egregious neglect or something, but they document what Mr. Guitaro did, or rather what he didn't do. Do you remember that letter? I don't remember the letter. Not a term for term at this point, but yes, I know what you're talking about. Also in the record is the felony conviction for reckless conduct of Mr. Guitaro. Right. He pled guilty to two felonies, class fours. He was charged like that night. And then I guess there was an indictment. Anyway, he subsequently pled guilty to reckless conduct. That's in the record. So my question to you is on a motion to dismiss under 2619. Yes. And we're going to review this de novo, so it really doesn't matter what the trial judge determined here. Are you saying there's a question of fact on this record that his reckless conduct didn't in some way, even if you say rather minutely, that the act of leaving her all day in the van and then actually not telling the countryside that he had done it, and then he like went to her house and didn't tell her mother about the effects of the 90-degree heat and apparently whatever, that there's a question of fact that somehow that what he did did not in any way contribute or cause the injuries? You know, I can't recite chapter and verse what we briefed on this, but, you know, what he pled guilty to extricate himself from going to jail is not binding on him. It's not binding. No. The question is to raise a question of material fact so as to preclude the entry of judgment as a matter of law. That's really the question. If we accept it's a contract, if we accept it's like insurance, if we accept there's an exclusion and we accept that this was a 2619 based on affirmative matter, have you raised a question of material fact? But he's not been deposed in this case. There was no facts developed of whether he had a defense in a criminal matter because he was in the situation of getting a plea deal to keep out of jail and everything else in the criminal case. That's a fair statement. Any assembling circumstance that he had in the criminal case. Okay. So there's a question of fact. He hasn't been deposed, has he ever? No, he just pled guilty and that's in the record and it's conviction from the record. But I understand. You're saying there's a question of fact. Let me ask you something about your policy. You would agree that the Philadelphia policy was actually a primary policy as we speak. It's not really, it wasn't a catastrophic excess policy, was it? In general principles. It was a primary policy with respect to. To autos. It was a primary policy with respect to owned automobiles. It's a business auto coverage. All right. Let me ask you this. Now in the policy itself, it says that there's covered autos. Okay. Right. All right. And there's a description of the various autos that are covered. Are you at a loss? Do you have it handy? I'm sorry? The policy describes, you know, autos you own. Right. Hired autos and then non-owned autos. Right. Okay. It says what hired autos are. It says only those autos you lease, hire, rent, or borrow. Okay. Right. Was this a hired auto? Did Countryside lease an auto from Pace? No. Pace was leasing the auto. No, it could have been a hired auto, but it wasn't leasing the auto. Pace leased the auto to Countryside. Right. Okay. I'm not sure I understand the distinction. You're saying did they lease it? It says only those autos you lease, hire, rent, or borrow. No, we could have hired or borrowed. Which one? Would it fit in with one of the hired autos? It could have fit in with hired, yes. Well, is there a question about it? Didn't they enter into an agreement with Pace to lease vehicles and then they would use them to transport? Well, this is at least ambiguous, whereas there's no question. There's no ambiguity about Philadelphia. I mean, the Pace agreement, and this was never raised either, by the way. No, I understand, but I'm looking at the policy. I understand. You represent Philadelphia. I'm not. This is the policy, and I'm just trying to ask you some questions about the policy. So it wasn't owned. Pardon me? Normally. Okay. Well, anyway, in the same policy it says what non-owned autos are, and it says only those autos you do not own, lease, hire, rent, or borrow that are used in connection with your business. So would you say if you agreed somehow that this was like leased, hired, rented, or borrowed, that according to the policy it's actually not a non-owned auto? I would have to, yes. All right. Well, then in the later part of the policy where it talks about primary and whether it's not primary, remember that part of the policy? I'm sure you'll refresh my recollection. Okay. All right. Well, I'm sorry, it's in the other insurance law. Okay. In the other insurance part, it says for any covered auto you own, this coverage form provides primary insurance. Could you repeat that? I'm sorry. Okay. It says for any covered auto you own, this coverage form provides primary insurance. So would that mean that it's really primary for these leased, hired, whatever, borrowed, whatever you call them, PACE vehicles? I mean, I know the Court didn't get into any of this. What did the trial judge find? She said this was self-insurance, and because it was self-insurance, PACE shouldn't have to pick up the tab because they'd be paying for this out of the public coffers, so to speak. Wasn't that her ruling? Yes. Exactly. Okay. Well, so that's really what you're contesting. This was a contract for insurance. Now we're getting to this issue where PACE is expressly, in its comparable provision is agreeing to be primary, and what you're reading says that Philadelphia is agreeing to be primary,  Right. But what do we do when there are competing clauses regarding other insurance? Well, you know what? The cases that are discussed in the briefs certainly suggest something about other collectible insurance. Let's talk about that, okay? Because that was in the briefs, wasn't it? Yeah, I believe it was. Wasn't one of the cases, well, the case you rely on is the case involving where, was it the village of Linwood? Did they agree to, did Irma agree to pay up to $8 million for accidents involving the municipal employees? I believe that's correct. You think we should? I'm sorry? Do you think we should reschedule because you didn't even have the day right, right? That's right. Yeah, I mean, I don't want to put you at a loss. Well, I think you have a command of this. Well, let's talk about equitable separation then. Now that's in the briefs too, isn't it? That's in the briefs too, yes. So for equitable separation, and we'll assume for purposes of the argument that this is a contract for insurance. Okay. All right. So under the principles of equitable segregation the way I understand it, it's a doctrine that was created, and it's an equitable doctrine, that attempts to make one party whole because they essentially picked up the tab for someone else who really should have paid it in the first place. Isn't that what equitable segregation is? That's right. And we came in here and pasted nothing despite under the plain terms of this contract, did nothing, and we stepped up to the plate here. All right. But Philadelphia really had to step up, didn't they? We had. Wouldn't they be in a jam if they didn't defend their insurance? I mean, Philadelphia issued a policy of insurance. There's no question about that one. And their insurance was countryside, and the policy covered countrysides, agents, employees, et cetera. So when this letter came from the attorney for the young woman who was injured, the tender went right out to Philadelphia, and they said, you need to cover this. Didn't they? Yes. All right. So wouldn't Philadelphia have been in serious danger if they didn't defend their insurance? It's true. They had to step up. So anyway, let's go back now to subrogation. Subrogation is where you're really trying to make another party, the party who stepped up, whole because they picked up the whole tab. Right. All right. So do you believe on this record that there's no question of fact that countryside, in some way, by their agent, didn't contribute to the injuries? Probably not. So we have to have equitable contribution. Okay. All right. So now we've kind of, there's a slight concession that subrogation doesn't apply. All right. Now, contribution is another doctrine that allows concurrent insurers to sue the other if they didn't contribute their fair share. Right? That's right. All right. And under that doctrine, the insurers have to insure the same risk. Right? That's right. All right. So if we take this PACE document, we call it an insurance policy, and we take the Philadelphia policy, which we know is an insurance contract, is there any question of fact, based on the documents, that PACE was not insuring all the same things that Philadelphia was insuring? I don't think there's any question of fact that they were both insuring the same thing. Okay. Now, how can you say that when one policy specifically excludes reckless conduct and the other policy doesn't exclude reckless conduct? Well, I guess that hasn't been determined yet. No. I'm talking about the language, not whether his conduct was reckless. The issue for contribution is always to compare the insurance policies, and they have to insure the same risks. They have to be concurrent. They have to be equal in order for Philadelphia to seek contribution from the other insurer. Well, when you start going that way, you can say that their policy more specifically insured the PACE fee and ours didn't. I mean, you know, the risk here was the injury. The risk here was the injury to the underlying plaintiff. So you don't think there's more to it than that? It was a risk by any cost to this underlying plaintiff. Okay. It wasn't the manner or the occurrence. Okay. But you think that they're concurrent policies? Yes. If they are concurrent, if one is excess and one is primary, there's also this principle of law up there that an excess carrier can never seek contribution from a primary. Right? Excess would be, no, that would be subrogation. We already went through subrogation. Subrogation is always trying to make one party whole because they actually took up the whole burden, paid for it, and then the other person who really should have done that didn't do it. But contribution is a completely different concept. That's right. But if we're excess, it would be subrogation. If we're both primary, we would be contribution. Okay. But if one of you is excess and one is primary, contribution doesn't lie. That's correct. We're just walking through this one at a time, I was assuming. You keep going back to the Wolfland-Wanton. You're disputing that. They filed a motion to dismiss alleging that the employee here was Wolfland-Wanton reckless conduct. They submitted the allegations. We know what happened. He went, the lady was left on the bus. He came back after the end of the day, ignored her condition, drove her home. They submitted a proof of conviction saying that he pled guilty to being Wolfland-Wanton. What material did you submit in answer to that to counteract the allegations of fact there that this guy's conduct was what they said it was? This was all a motion to dismiss. It didn't get to the summary judgment stage. There was no evidence taken. We said we had no evidence. There was no evidence. I'm sorry. Can you catch on? Okay. Go ahead. It was our position that this wasn't evidence. The underlying conviction wasn't evidence because this plea agreement and the resulting conviction wasn't truly, I guess those are evidentiary facts, you know, granted. But they're not binding facts. They're not conclusive facts because these plea agreements are not conclusive. They weren't based on, they weren't like a normal conviction. What were they like? What? What were they like? Well, you said they're not like a normal conviction. Under the law, they're not conclusive because they're not based on an actual criminal conviction because no evidence is taken. It's a plea agreement like any other plea agreement. Did he submit anything to dispute the fact that she was left on the bus? No, he didn't. Did he dispute the fact that when he saw her at the end of the day, he didn't call 911? We weren't, the burden wasn't on us to do that. So it wasn't a summary judgment? No. The 2619 affirmative matter is just like a summary judgment motion. The cases are pretty plentiful. But it's just like a summary judgment. If the non-movement presents evidence to support the affirmative matter, then the burden shifts to the movement to then produce something to contradict, contradict so that there's a question of material fact. But you indicated that you think there's a question of material fact. But a plea of guilty actually is just like any other conviction, just, you know, in case you're interested, the fact that somebody pleads guilty is not unlike any other finding of guilty that a jury or a judge would enter. There's no distinction in the law whether or not you have to do a binding. Well, it's not binding. It's not binding as collateral estoppel according to the case law. No. Well, I think they're going to tell you something different when you get up here. But whatever. You believe there's, you know, a question of material fact. And there may well be. A disputed issue of material fact. Has it ever disputed other than with argument? Well, we took the position it had to be deposed, okay? I mean, you can do that by summary judgment by saying that we need to depose the person and that. You can file a motion and ask the court to give you some time before you respond to take a deposition. But did that happen here? Well, we took the position that we needed to be discovery in order to rule on this and that there was no collateral estoppel effect to the guilty plea. And there needed to be discovery. I don't have the documents in front of me, but that's the position we took. And that's what the trial court agreed with. We didn't file a 191B motion. I don't know that collateral estoppel is really the question. On a 2619, if there's affirmative matter produced by the non-movement. I understand what you're saying. We took the position that we needed discovery, that there needed to be a discovery to determine this issue and that the guilty plea was not binding. And the trial court agreed with that. And I don't have the record in front of me to remember exactly what we filed. But that's a way to challenge these things. She said it was self-insurance. I'm sorry? The trial judge basically said this was self-insurance and that under Anticorac and the other cases out of the second district. That's what she said? That there was really not a contract of insurance here. And that it was self-insurance. And as a result, the money that would be paid would come from state coffers. And therefore, it was against public policy to make ACE pay the damages or the amount of damages in this case. That was her ruling. Correct. We get this all anew. Right? We're looking at it anew. Yeah, I agree. I agree. I agree. All right. Okay. Counsel, do you want to reserve the remainder of your time? Thank you. And I appreciate your patience this morning. Okay. Thank you very much. Counsel, whenever you're ready. Thank you, Your Honor. May it please the Court. Your Honor, part of me is telling me I should just shut up right now. Well, what about this question of material fact? Is there a question of material fact? I don't think so. And I think that was one of the questions I wanted to address specifically. In the complaint that was filed against ACE. Well, there was no complaint filed. No, I mean the complaint in this case. The complaint in this case. Oh, the declaratory case. The declaratory case. One of the exhibits for that complaint, with their attention as to why they settled the case, was a letter from Siegel and McCambridge, the plaintiff's attorney, outlining all of the facts of what happened. Is that the September letter? The September 6, 2013 letter. And it talked about it. And the reason that they have said all along, everything that they have said as to why this case needed to be settled and why anybody should pay anything, was for exactly the facts that you just described. That is, that their employee left this little girl, or actually I say little girl because I think of her. She was 42. She was 42, so I apologize for that. But she had the mental kick. She had the mentality of a little girl. A young child. She left him in a bus, a hot, sweltering day, for six hours, comes back to the bus, does nothing about it. There's no dispute about that. There hasn't been. They haven't raised a dispute. They haven't paid a whole lot of money because they knew that's exactly what happened. Well, what was this PACE agreement anyway? What would you call it? I would call it self-insurance. They actually entered into an agreement where they were going to provide commercial automobile auto liability coverage to Countryside for any claims of bodily injury, death, or property damage arising directly out of the provision of transportation services provided with PACE vehicles as described in this agreement within the scope of PACE's self-insured retention and up to the liability limits of such excess insurance that PACE may purchase. Right. Okay. So what exactly were they providing? They were providing coverage for their vehicles. Yes. They own these vehicles. They were providing coverage for the vehicles, and they provided self-insurance. I think that what you just quoted from there makes it very clear. Everybody understood what they were providing was within PACE's self-insurance. Nobody was under an illusion that they were providing commercial insurance. They were providing coverage. And I think it's very much what you're saying. But it does say that it will be auto liability coverage to any claims for all or any claims of bodily injury, death, or property damage arising directly out of the provision of transportation services provided with PACE vehicles. Correct. So what is your understanding of what it is that they were providing? They were providing self-insurance. Yes. Just like the ARMA. Like there was a person injured. Right. Right. Just like ARMA does for their people. Right. They were providing self-insurance for injuries that arose out of their vehicles and, as Yolanda mentioned, excluding reckless conduct. Okay. So did the injuries arise out of the use of a PACE vehicle or the provision of transportation services? I don't think there's any question that they did. Okay. So it would seem to cover this, but then there's this exclusion. Correct. And I don't think there's any issue of fact concerning the fact that this was reckless conduct. Did you argue that? Was it in your motion? I believe I argued. My argument was that they were collaterally stopped from denying it, and I argued that it was recklessness, and we also argued that PACE has the right to make that coverage determination. PACE specifically, in its agreement, reserved the right to make determinations regarding coverage independently. They didn't say, you can go out, decide it's not reckless conduct, settle the case, and pay it, and then come back and sue us. They said, we get to make that determination. It's up to us, which is what you do when you have a self-insurance situation. It's a little bit different than an insurance situation. So they did agree to provide coverage of some kind by consequence. I don't think I would call it insurance. They provided self-insurance. Well, Philadelphia argues that this whole thing wouldn't have happened if you had had a child monitoring device, a safety device in the bus, and that for that reason they should be able to cover some portion of these damages. Except for the fact that the exclusion is not that narrow. The exclusion says it excludes any claims, actions, or damages arising as the result of reckless conduct. I don't think there's any question this was the result of reckless conduct. Now, if there was some Well, hold on. I'd call her the plaintiff, the underlying plaintiff, even though no lawsuit was filed. Lisa Gomez, I think Justice House is suggesting she was also alleging or going to allege, claiming that Countryside itself was negligent because they had all these they failed to have all of these protections in sight. And that is not inarguably reckless conduct. In fact, I don't think Well, Pace is negligent. First of all, I think Pace has sovereign immunity with respect to its negligence. So we can't really deal with that. But even as to Countryside, this says that if the claim or the damages arose as the result of the employee's reckless conduct, we don't cover it. But can you say here that the damage to Ms. Gomez arose as a result of the driver's recklessness as compared to Countryside's negligence? If the driver hadn't been reckless, this wouldn't have occurred. But for the driver's recklessness Or maybe if Countryside had proper equipment, this wouldn't have occurred. I mean, how are we able to say that? But I don't see how I think it's excluded because there's no question that the driver's conduct was a proximate cause of this injury. Is that the standard, a proximate cause? It says as a result of Well, quite honestly, I would guess the standard is before because it's arising out of or arising as a result of and there's case after case in Illinois that says that means before. Well, we all know that proximate cause can be many things, many reasons. But the thing that they changed immediately after this, the thing that Countryside did to make sure that something like this They actually put into place, I think, the next day that a Countryside employee would be a backup to the driver. That's in the record, isn't it? Yep. That's what they did. Okay. So your position is that the policy that excludes the coverage relates to, and it's broad, any claims, actions, or damages arising out of the result of reckless conduct. Right. Your position is that there's no question that any cause or part of the cause was his reckless acts. Absolutely. But counsel, Mr. Swofford, argues that there's questions of material fact on whether or not there was reckless conduct. I don't see where the question comes in. He pled guilty to it. So even if it's not collateral estoppel, we've got evidence on the record that he was reckless. He would have to admit on the record that his conduct was reckless. The recitation of what the conduct is in the plaintiff's, you know, the basis for the settlement was that September 6th letter from Siegel McCambridge. That clearly set forth conduct that I don't think anybody would dispute was reckless. Well, why don't you tell us why it doesn't matter that there were numerous allegations of negligence against everybody? Well. Countryside, Gallardo, Pace. Why doesn't it matter in this case that even though there was never a lawsuit filed, which does make a difference. I think. But there were allegations, and there is a suggestion, certainly, that there was negligence to go all the way around. Why doesn't that matter in this case? I think there are two reasons. First of all, there was no complaint filed. Yes, I know. So all these allegations, I mean, it's not a duty to defend case in the first place. Yes. So we don't have to take all the allegations of the complaint. But we don't even have the ability to assume that those allegations against Countryside and Pace were vetted by the plaintiff's attorney sufficiently to get by Rule 137. But let's. But let's assume they were. Well, let's say why don't these claims. Okay. Forget about the lawsuit. I understand there's no duty to defend. There was no duty to defend on the part of Pace. There was no lawsuit ever filed. But there were claims made, certainly. Now, why doesn't it matter that there were these other claims of negligence? Why doesn't it matter in this case that the fact that Ms. Gomez, through her attorney, made numerous allegations of negligence, why doesn't that matter for our purposes? Because once it's excluded because of the recklessness, it's excluded. The loss is excluded. The exclusion says it excludes coverage for claims, actions, and damages arising as a result of. Well, the damages that Lisa suffered in this case were the result of Mr. Guitardo's reckless conduct. Well, at least there was a cause, perhaps. Clearly, a cause. But it doesn't say once they're excluded, we can get it back in if there's other negligence. I just wanted you to explain it for us so that we could better understand the position. If there's any cause, regardless of whether it's a negligent cause, if there's evidence that doesn't raise a question of material fact, that at least some part of a reckless act caused Ms. Gomez's injuries, the Pace liability coverage excluded that. Correct. And it doesn't exclude it for some, but not for others. Well, you can't divide the injuries. As far as we can tell, there's no way to say, well, she wouldn't have suffered this, but she suffered that. Well, here. Pace's coverage was limited. Philadelphia's coverage was limited only to the extent that they were intended or expected from the standpoint of the insurer. Correct. There was no reckless conduct exclusion in the Philadelphia policy. Absolutely. Well, is that exclusion sufficient to prevent a contribution claim? I think it is more than sufficient. Well, there are so many reasons that there's no contribution claims in this case, Your Honor. I mean, there is one that bears that exclusion. There's the other that if it's a contribution claim, first of all, it has to be two insurance companies. And I don't think you can say Pace is an insurance company. Pace didn't provide an insurance policy. And finally, even if you treat it as an insurance policy, they don't insure the same risks. Mr. Swafford was saying, well, they insure the injuries. Well, that's not the standard. The home insurance company case made it clear. You can have two policies that both end up coincidentally insuring the loss at hand, but that doesn't mean they insure the same risks. Here, the Pace policy did not provide coverage for reckless conduct. Their policy did provide. So there's a big difference in the risk. Pace's policy covered only Pace's buses. The Philadelphia policy covered anything driven by countryside. We didn't insure the risk for other vehicles driven by countryside. They didn't insure things for other vehicles, other Pace vehicles that weren't used by countryside. The risks are not the same. So based on the Shaw-Borges case, based on the home indemnity case, there is no claim for contribution. If this woman had been injured because the Pace vehicle, let's say, had a defective engine or something, or maybe all four tires blew out at one point and a number of people were injured, would you agree that this coverage would encompass those kinds of scenarios? If the reason for the accident was because Pace's vehicle was defective? Yes. Yes, I think the self-insurance coverage would typically cover that. Is that really kind of what this coverage was all about? Or is it something else? Well, I mean, frankly, if the driver had been in a wreck, you know, and just was negligently driving along doing something that was not reckless, that would probably have been covered. I don't want to go too far. Sure. If that had happened, if the bus had been in an accident and somebody said, I'm going to sue Pace, I'm also going to sue countryside, and maybe I'll sue the driver, too. But there was no clear-cut recklessness, okay? It was hard to tell who was at fault. One of those very fact-intensive things. Not a plea of guilty to recklessness. You would still say, though, based on the argument you made before the Court and the one I think that Judge Larson embraced, you would say, since we're public funds, we don't count as insurance, so you can't get ads. Well, I think if Philadelphia had paid it, as opposed to us paying it first, that would be correct. I don't think they would have a right of equitable subrogation. I don't think they have a right of equitable contribution because we're not an insurance company. And there is a very strong doctrine in this State to protect public funds. I think the Illinois Supreme Court has made that clear. The other courts, the other appellate courts have made it very clear. There's a very strong policy of protecting public funds. A big part of the argument in the lower court was whether these are really public funds. In fact, that was, you know, counsel mentioned they asked for discovery. What the discovery they asked about was whether these are really public funds. Well, your position, I'm sorry. No, go ahead. I'm sorry. I mean, your position is clear today. You're not saying that there wasn't coverage provided under certain circumstances. What you're saying is that the coverage did not extend to reckless conduct. That's correct. I'm also saying that it was an insurance policy. So it really doesn't matter whether we call it self-insurance, policy of insurance, or anything else. You're not saying that there wasn't a contractual obligation to pay depending on what the claim was. There would have been a contractual obligation to pay different claims, yes. That would be correct. And under just as Ellis' scenario, if there had not been an early payment but a lawsuit filed, then your contractual obligation would have been, you know, without the reckless conduct. Right. Okay. If you chose to. If we chose to. Because this contract isn't like another insurance policy that actually requires the duty to defend. I don't think it does. I think, no, Countryside may have been able to sue us, I suppose, and that might have been because they have a direct contractual relationship. I don't think their insurance company is in the same position. But that's not the case here because there was reckless conduct. Pace made the decision which it reserved to, and I think this is also unlike an insurance company, that it reserved to itself the right and discretion to determine coverage. And I think it's not like it acted arbitrarily in doing so. I think it had more than enough basis to determine that this was a case that is not covered under its policy because of the reckless conduct of the driver in this case. So what is Philadelphia supposed to do in this scenario? They get this case and they think that they can make an argument that Pace should cover this case. Pace promised to provide commercial primary coverage. Pace says, no, we're not going to do it. And so now Philadelphia is trying to figure out what to do. What did they? You put a lot of stock in the fact that they just paid it and then turned to you. What should they have done? You know, it's hard to answer a hypothetical like that, Your Honor. I'm not exactly sure what they should have done. I think the problem is there is, since we're not an insurance company, the rules that apply to insurance companies don't apply to us, I suppose they could have let the case go to judgment and seen what happened about executing on the judgment. But I think their problem they had is our policy didn't cover this. Theirs did. So since their policy did cover it and ours didn't, or our coverage didn't, I think they did what they should do, which is they paid the claim. Well, if they hadn't stepped up, we all know that they would have been the defendant in a coverage suit over in Chancery. There would have been a declaratory judgment based on their breach of a duty to defend if they didn't step up. Absolutely. Now, multiple insurance companies can have duties to defend, but if any one of them doesn't step up when their policy covers a claim, then they'll be the subject of a decade from now. Absolutely. You know, Your Honor, I think in the various cases, if you look at the Shaw-Bogles case, I think the same situation occurred in that case. There was an insurance company that stepped up to the plate and another insurance company that didn't step up to the plate, and the court said, well, you don't have a right of contribution because you don't insure the same risks, and if you don't insure the same risks, you don't have a right of contribution. I think this case is that much stronger because not only don't they insure the same risks, but this is PACE's self-insurance. It is public funds, so I think there's a very different situation. I think any time you've got a situation where carriers find themselves in hard places all the time, I represent a lot of carriers, so I'm well aware of that, they sometimes have to step up, but I think the Hohman-Demny case and the Shaw-Bogles case both made it clear you don't always have a right of subrogation or a right of contribution against another carrier. In this case, they don't. Well, how would you distinguish the other case from the first district? You know, it's what I'm talking about, Justice Breyer. Yeah, the Illinois Municipal case. The big difference there is, in that case, the Village of Linwood stepped up and did the opposite. They paid first, and then we're trying to sue, so it's a totally different situation. Now we're not talking about contribution between two insurance carriers. We're not talking about the right of equitable subrogation between insurance carriers. We're talking about a municipality that conceded it had coverage for this, which PACE has never done. It actually paid the money, and then it was trying to use sovereign immunity kind of as a sword, and I think there's one thing to use sovereign immunity as a shield to have somebody sue you, and it's a different thing to use it as a sword and say, well, because I have sovereign immunity, you, other insurer, have to pay. And I think the other thing was the terms of the policy in the Illinois Municipal case clearly wouldn't have provided coverage in any case. It was an umbrella policy. It applied only in excess of, like, $8 million. So the amount involved in that case was different, but I think the clear fact that they paid it first is a very big distinction. I think this case is much more similar to the state-funded DuPage case, where, you know, State Farm was suing DuPage. What about exclusions have to be clear and free from doubt? Well, first of all, this isn't an insurance policy. Well, let's just assume it is. They contracted, and they say, auto, commercial auto liability company. And then I say, what about this exclusion? Is it clear and free from doubt? What about the burden of proof on an exclusion? Is there any difference? Is it always the preponderance, or was it anything else that you recall? Was it always the preponderance? Is it the preponderance, or is this one of those clear and convincing cases? No. I've never seen a case where they said the exclusion or anything in insurance was anything more than preponderance. But the exclusion has to be clear and free from doubt. Exclusion. The exclusion itself has to be clear. And free from doubt. And free from doubt. The application. But this is not an ambiguous exclusion. All right. Thank you, Your Honor. Your Honor, if you have anything else, I'd be happy to answer more questions. But I think I've said as much as I need to. Thank you, counsel. Thank you. And I would appreciate it if you would affirm the judgment below. Thank you. Mr. Swofford. Yes, Your Honor. Thank you. They claim that even if there is a question of doubt about willful and wanton conduct, you pay. And because you pay first, under the facts of this case, you have no right to equitable contribution or subrogation. Well, as Justice McBride pointed out, it's an insurance company. We're obligated to pay under the law. But what theory? We weren't paid as a volunteer, nor were we. This whole business about the exclusion, you know, the burden. They don't rely on exclusion. And the burden of proof is on them. It wasn't on us to prove we weren't reckless. And I think one thing's gotten lost there. The complaint that the Gomez's filed alleged negligence, it didn't allege the reckless conduct. The small fact was a fact nonetheless. And also something that troubles me a little bit when we're talking about whether these policies cover the same risk. You start defining the same risk in terms of policy exclusions. I'm just wondering, you know, equitable contribution and subrogation is going to start disappearing because no insurance policy has the same number of exclusions. You know, the risk insured here was the risk of bodily injury caused by an automobile. And, you know, those are the main points that I don't think we're coming across maybe in the questions. And the court was obviously certainly more prepared than I am or was. And thank you very much. And I'll share with you more questions. Thank you, counsel. Thank you both sides for your argument today and for your briefs. Very interesting case. We will take it under advisement and stand adjourned.